IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VIVINT, INC., et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:21-cv-00076-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiffs Vivint, Inc. ("Vivint") and a group of Vivint employees filed this case seeking various kinds of relief related to Vivint's L-1B visa petitions on behalf of the individual plaintiffs. The case comes before the court on Defendants' partial motion to dismiss. After hearing oral argument on May 9, 2022 and reviewing the briefs, the court took the matter under advisement. The court also accepted supplemental briefing on the impact of the recent Supreme Court decision, *Patel v. Garland*, 142 S. Ct. 1614 (2022). The court now GRANTS Defendants' partial motion to dismiss.

## BACKGROUND

Vivint is one of the largest home automation companies in North America. The company operates offices throughout the United States and Canada. Vivint filed petitions for L-1B visas for a number of employees. An L-1B visa is a non-immigrant visa that enables a U.S. employer to transfer a professional employee with specialized knowledge relating to the organization's interests from one of its affiliated foreign offices to one of its offices in the United States. Vivint specifically filed the L-1B petitions for employees in Sales Manager positions.

The individual plaintiffs are all Vivint employees for whom Vivint petitioned visas. The individual plaintiffs fall into different categories based on the procedural posture of their immigration cases. This motion pertains only to those employees who "applied for admission at preclearance stations or ports of entry, were determined by CBP officers to be inadmissible, and were given the opportunity to withdraw their applications for admission." *See* ECF No. 66, at 3. Joseph Friesen, Jeffrey Harbidge, Joel Holmes, Jovan Kang, Jason Rawlek, Muhammad Siddiqui, and Jonathan Whidden fall into this category. For purposes of this motion, "Plaintiffs" refers to these individual Plaintiffs.

Defendants are officials that lead various United States immigration agencies including the Department of Homeland Security, United States Citizenship and Immigration Services, and Customs and Border Protection ("CBP").

This case requires some background regarding the United States' immigration system. Our immigration system is largely governed by the Immigration and Nationality Act ("INA"), codified in Title 8 of the U.S. Code. Under the INA, a foreign national arriving at the United States' border is considered an "applicant for admission." 8 U.S.C. § 1225(a)(1). This includes individuals who arrive at the border with a visa or other documentation. In other words, a visa grants permission to apply for admission; it does not ensure admission to the United States. At the border, a CBP officer makes a determination as to the individual's admissibility. The INA enumerates many grounds for a CBP officer to make a finding of inadmissibility. For purposes of this case, the relevant provision renders inadmissible an applicant for admission who "is not in possession of a valid nonimmigrant visa or border crossing identification card at the time of application for admission." *Id.* § 1182(a)(7)(B)(i)(II).

When an immigration officer concludes that a noncitizen lacks a valid visa and thus is inadmissible under § 1182(a)(7)(B)(i)(II), the officer "shall order the alien removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(A)(i). This is commonly called "expedited removal." Final orders of removal issued under the expedited removal provision are largely not subject to judicial review.[1] *See id.* § 1252(a)(2)(A)(i) ("[N]o court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)."). And the admissibility determination underlying the final order of removal is not reviewable. *See id.* § 1252(e)(5) ("There shall be no review of whether the alien is actually inadmissible.").

If a CBP officer finds that an applicant for admission is inadmissible, the officer may, in her discretion, permit the applicant to withdraw her application for admission and depart immediately. *Id.* § 1225(a)(4). Noncitizens who withdraw their applications for admission avoid entry of a final order of removal against them. Final orders of removal can carry serious consequences. For instance, a final order of removal issued pursuant to 8 U.S.C. § 1182(a)(7) carries a five-year bar on admission to the United States. *Id.* § 1182(a)(9)(A)(i).

The present motion argues that the court lacks subject matter jurisdiction over claims related to the individual plaintiffs because the INA provides that CBP officers' decisions are discretionary and thus not subject to judicial review.

---

[1] The only exceptions are located at 8 U.S.C. § 1252(e) and do not apply here. Specifically, "[j]udicial review of any [expedited removal determination] is available in habeas corpus proceedings, but shall be limited to determinations of (A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an [LPR, refugee, or asylee.]." *Id.* § 1252(e)(2). Petitioners can also challenge the constitutionality of the provision or regulation within sixty days of the date the challenged section or regulation is implemented. *Id.* § 1252(e)(3).

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Because Defendants bring a facial attack on the complaint's allegations, the court must accept as true all material fact allegations in the complaint. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (citation omitted).

Generally, there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986), *superseded on other grounds by* 42 U.S.C. § 405. It takes "clear and convincing evidence to dislodge that presumption." *Kucana v. Holder*, 558 U.S. 233, 250 (2010) (internal citation and quotation omitted).

**ANAYSIS**

Plaintiffs bring their claims pursuant to the APA.[2] The APA permits a court to set aside an agency action or decision if the action or decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA outlines when judicial

---

[2] Although the APA waives sovereign immunity in some instances, the APA itself does not provide federal district courts with subject matter jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 n.4 (10th Cir. 2006). Instead, the jurisdictional basis for APA suits lies in 28 U.S.C. § 1331, federal question jurisdiction. *Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]f review is proper under the APA, the District Court has jurisdiction under 28 U.S.C. § 1331.").

review of agency action is available. Sections 701-06 of the APA supply a "default rule . . . that agency actions are reviewable under federal question jurisdiction . . . even if no statute specifically authorizes judicial review." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004). But Congress can abrogate the presumption of judicial review. 5 U.S.C. § 701(a)(1) (noting that the APA does not apply "to the extent that . . . statutes preclude judicial review.").

Under the INA, Congress abrogated the presumption of judicial review for certain immigration-related decisions. Specifically, the INA strips this court of jurisdiction to review discretionary decisions by immigration officials, *see* 8 U.S.C. § 1252(a)(2)(B)(ii) (denying district courts jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security"), as well as most decisions related to an expedited order of removal, *see id.* § 1252(a)(2)(A)(i) ("[N]o court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1).").

The question here, then, is whether Congress has abrogated this court's ability to hear the relevant claims. Although Plaintiffs can overcome several bars to jurisdiction, the court ultimately determines that Congress has stripped this court of jurisdiction over the relevant claims.

## I.    APPLICABILITY OF 8 U.S.C. § 1252(a)(2)(B)(ii)

Defendants first argue that the court lacks subject matter jurisdiction over Plaintiffs' claims because the INA provides that the decision whether to permit a noncitizen to withdraw her application for admission rests in the discretion of an immigration officer. *See* 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and

at any time, be permitted to withdraw the application for admission and depart immediately from the United States."). But, as Plaintiffs point out, they do not challenge the decision to permit withdrawal of their applications for admission, but rather the prior decision finding them inadmissible.

All noncitizens who arrive at the United States—even those who possess a visa—must be inspected by immigration officers for admissibility. *Id.* § 1225(a)-(b). If an immigration officer finds an individual inadmissible, they cannot admit the individual into the United States absent a waiver of inadmissibility. *See id.* § 1182(a) ("Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are . . . ineligible to be admitted to the United States."). In other words, "for a CBP officer to deny entry to a person seeking admission at the border, they need a valid legal basis." *Atanackovic v. Duke*, 399 F. Supp. 3d 79, 88 (W.D.N.Y. 2019).

Accordingly, an immigration officer's admissibility decision is nondiscretionary and thus not subject to the bar on review of discretionary decisions.[3] *See, e.g.*, *United States ex rel. Vaso v. Chertoff*, 369 F. App'x 395, 401 (3d Cir. 2010) (unpublished) ("The determination that an alien is statutorily inadmissible is a nondiscretionary, legal determination, for which § 1252 does not foreclose review."); *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) ("[A]dmissibility determinations . . . are non-discretionary determinations that are subject to judicial review." (citation omitted)); *Aldarwich v. Heinauer*, No. 8:12-cv-1463, 2013 WL 12084728, at *3 (C.D.

---

[3] Although the parties do not focus their briefing on this point, the court also notes that "the relevant provision of the Immigration and Nationality Act does not commit the decision whether to grant an L-1B petition to the independent discretion of the Attorney General or the Secretary of Homeland Security." *Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1138-39 (D.C. Cir. 2014). Accordingly, to the extent that Plaintiffs challenge USCIS's denial of Harbidge and Kang's L-1B visa petitions, those are nondiscretionary—and thus reviewable—decisions.

Cal. Feb. 22, 2013) ("[I]nadmissibility determinations pursuant to INA § 212, 8 U.S.C. § 1[1]82 . . . are not . . . discretionary. Therefore, 8 U.S.C. § 1252(a)(B)(ii) does not categorically bar a court from reviewing inadmissibility determinations.").[4]

---

[4] At oral argument, the parties agreed that a case pending before the Supreme Court involved issues potentially relevant to the question of the court's jurisdiction over this case. Accordingly, the court permitted each party to submit supplemental briefing, shortly after the Supreme Court issued its opinion in *Patel v. Garland*, 142 S. Ct. 1614 (2022), explaining the impact of *Patel* on this case.

Both parties submitted a brief. Plaintiffs' briefing primarily responded to several arguments made in Defendants' reply memorandum. It engaged very little with *Patel*, arguing only that "[w]hile the *Patel* case raised broad issues related to the scope of judicial review available in immigration cases, the narrow manner in which the Court decided the case renders it inapplicable to the present case." ECF No. 73 at 7. At bottom, Plaintiffs contend that "[t]he holding in *Patel* is . . . irrelevant to this case." *Id.* Defendants' supplemental brief engages more directly with *Patel*. It argues that, while *Patel* involves a different statutory subsection than this case, the Supreme Court's reasoning supports Defendants' position in this case. Specifically, Defendants argue that "[t]he *Patel* decision demonstrates the Supreme Court's strict adherence to the language and structure of the jurisdiction-stripping provisions in § 1252(a)(2)(B)." ECF No. 74 at 5.

The court agrees that the *Patel* Court applied a strict interpretation of § 1252(a)(2)(B)(i) that forecloses review of any underlying factual decision affecting the grant of relief under the enumerated subsections (including, in Patel's case, discretionary adjustment of status). Defendants argue that this strict interpretation indicates that one cannot easily separate the ultimate decision from underlying determinations. But the language in § 1252(a)(2)(B)(ii)—the provision relevant here—differs in an important way from the language in § 1252(a)(2)(B)(i). Specifically, § 1252(a)(2)(B)(ii) prohibits judicial review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." In other words, for § 1252(a)(2)(B)(ii) to cover a decision, the decision must be specified to be discretionary. Section 1252(a)(2)(B)(i) lacks comparable language explicitly limiting its jurisdiction-stripping to discretionary decisions. *See Patel*, 142 S. Ct. 1622 ("But the text of that provision applies to '*any* judgment.' Had Congress intended to limit the jurisdictional bar to 'discretionary judgments,' it could easily have used that language, as it did elsewhere in the immigration code."). Rather, § 1252(a)(2)(B)(i) covers "any judgment regarding the granting of relief under" certain sections, which the Court held to include factual findings that underlie the decision to grant or deny relief under the listed sections, regardless of whether the determination was discretionary or not. *See Patel*, 142 S. Ct. 1622. In contrast, § 1252(a)(2)(B)(ii) explicitly includes a requirement that a decision be discretionary in order for its jurisdiction-stripping provision to apply.

Here, Plaintiffs only challenge the nondiscretionary admissibility determination—not the discretionary withdrawal determinations. Because § 1252(a)(2)(B)(ii) covers only decisions

Plaintiffs' decision to focus on CBP's inadmissibility determination, rather than its decision to permit withdrawal distinguishes the present case from one on which the Plaintiffs rely heavily in their briefing, *Atanackovic v. Duke*, 399 F. Supp. 3d 79 (W.D.N.Y. 2019). *See* ECF No. 67 at 8 (arguing the situation in *Atanackovic* is "100% on point with the cases at issue in the instant motion to dismiss"). As an initial matter, *Atanackovic* primarily discusses the applicability of the consular nonreviewability doctrine, which is not at issue here. The court spends just one paragraph discussing the applicability of the expedited removal jurisdiction stripping provision at 8 U.S.C. § 1252(a)(2)(A)(i). *Atanackovic*, 399 F. Supp. 3d at 88. In essence, the *Atanackovic* court found that the agency action in question was the withdrawal of admission, not the expedited removal order.[5] *Id.* But once the *Atanackovic* court honed in on the withdrawal decision as the relevant agency decision—instead of the inadmissibility determination, as is at issue here—it failed to address the INA's bar on judicial review of discretionary decisions. *See id.* (stating that the INA is "silent" on judicial review of withdrawals of admission despite the INA's bar on review of discretionary relief in § 1252(a)(2)(B)(ii)). Accordingly, the court finds *Atanackovic* unpersuasive here.

## II.    FINAL AGENCY ACTION

In reply, Defendants shift their argument to contend that, if Plaintiffs seek to challenge only the immigration officers' admissibility determinations, then Plaintiffs' claims cannot overcome the

---

specified to be discretionary, *Patel* does not affect this court's analysis of the applicability of § 1252(a)(2)(B)(ii).

[5] Because of the *Atanackovic* court's focus on withdrawal of admission, it did not grapple with whether an inadmissibility determination could qualify as ordering a noncitizen removed in light of a noncitizen's decision to withdraw her application, an issue that becomes relevant in section III.

APA's limitation of judicial review to final agency action.[6] The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  Here, the court is aware of no statute

---

[6] The Tenth Circuit has suggested that this is a jurisdictional argument. *See, e.g.*, *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1034 (10th Cir. 2017) (affirming dismissal for lack of subject matter jurisdiction where an opinion letter did not constitute final agency action); *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 864 F.3d 1105, 1109 (10th Cir. 2017) ("Pursuant to the APA, we have jurisdiction to review only final agency actions." (citation omitted)). However, the court notes that numerous other courts of appeals, including the D.C. Circuit, have concluded that failure to challenge a final agency action means that the plaintiff does not have a statutory cause of action, not that the courts lack subject matter jurisdiction. *See, e.g.*, *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("[W]here] judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional."); *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494-95 (6th Cir. 2014) ("Because the APA does not confer jurisdiction, elements of a claim under the APA, including the final agency action requirement, are not jurisdictional."); *Nulankeyutmonen Nikihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007) ("[T]he APA's finality requirement is not jurisdictional in nature."); *see also Amin v. Mayorkas*, 24 F.4th 383, 389 (5th Cir. 2022) (noting that the view that the APA's judicial review provisions are limits on subject matter jurisdiction "may be out of step with recent Supreme Court rulings clarifying that a statue is 'jurisdictional' only if Congress says so"). These courts reason that because the APA is not a jurisdiction-conferring statute, "§ 704's declaration that final agency action is 'subject to judicial review' is not a grant of jurisdiction." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006). Instead of jurisdiction, the APA confers a limited cause of action for parties adversely affected by agency action. *See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805-06 (D.C. Cir. 2006). Accordingly, these courts would consider finality a question of whether the plaintiff has a cause of action, not whether the court has subject matter jurisdiction over the case. *See Reliable*, 324 F.3d at 731 ("If there was no final agency action . . . there is no doubt that appellant would lack a cause of action under the APA."). Indeed, at least one district court in the Tenth Circuit has followed D.C. Circuit precedent on this issue. *See Slater Park Land & Livestock, LLC v. U.S. Army Corps. of Eng'rs*, 423 F. Supp. 3d 1076, 1079 (D. Colo. 2019).

If this court had the latitude to follow any circuit, it would analyze finality under Rule 12(b)(6) rather than under Rule 12(b)(1). As Judge Browning of the District of New Mexico has already pointed out, "[t]he APA is not an independent grant of subject-matter jurisdiction, *see Califano v. Sanders*, 430 U.S. 99, 107 (1977), and [t]he Tenth Circuit's current position i[s] i[n] tension with the Supreme Court's statement in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), that, 'when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1191 (D.N.M. 2020). However, because this court is bound by Tenth Circuit precedent, it reviews this issue as a challenge to the court's subject matter jurisdiction. Moreover, because the court does not dismiss based on finality, the distinction is not salient in this case.

that makes the immigration officers' actions specifically reviewable, nor do the parties identify any such statute. Accordingly, Plaintiffs are limited to challenging only "final agency action" of the immigration officers.

Finality requires that (1) "the action must mark the consummation of the agency's decisionmaking process;" and (2) "the action must be one . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). Defendants argue that the inadmissibility determination did not mark the consummation of the agency's decisionmaking process because CBP officers later allowed Plaintiffs to withdraw their applications for admission. But immigration agencies' "decisionmaking process consummates when they issue a final decision regarding an alien's immigration status." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014). CBP's final decision was that Plaintiffs were inadmissible. And the inadmissibility determinations represented a "definitive legal position" on the part of CBP. *See CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 414 (D.C. Cir. 2011). The later withdrawal of Plaintiffs' applications did not alter CBP's definitive legal position—the agency still considered Plaintiffs inadmissible. It merely offered them grace to withdraw their applications—a decision that, Plaintiffs concede, is not at issue here. And legal consequences indisputably flowed from the inadmissibility determination; Plaintiffs were prohibited from entering the United States. Accordingly, Defendants' argument that Plaintiffs cannot overcome the limitation of judicial review to final agency action fails.

## III.   APPLICABILITY OF 8 U.S.C. § 1252(a)(2)(A)(i)

Finally, Defendants argue that, because Plaintiffs challenge a question of law, their case belongs (if anywhere) in a federal circuit court. Defendants cite to 8 U.S.C. § 1252(a)(2)(D), which provides that none of the provisions in this chapter "which limits or eliminates judicial review,

10

shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." But 8 U.S.C. § 1252(a)(2)(D) merely reiterates that appellate courts retain jurisdiction over constitutional claims and questions of law in petitions for review, even if the constitutional claims or questions of law are raised by discretionary decisions. *See Thompson v. Barr*, 959 F.3d 476, 481 (1st Cir. 2020) ("[T]he plain language of § 1252(a)(2)(D) evidences congressional intent to render purely discretionary decisions reviewable for legal error.").

The more applicable provision is what the Supreme Court has referred to as § 1252's "zipper" clause. In essence, § 1252(b)(9) "zips" all claims related to a final order of removal into a single petition for review in front of an appellate court. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1070 (2020) ("Congress intended the zipper clause to consolidate judicial review of immigration proceedings into one action in the court of appeals." (citation omitted)). In other words, judicial review of all questions of law and fact that underlie a final order of removal must be brought in a petition to review a final order of removal in an appellate court. *See* 8 U.S.C. § 1252(b)(9); *see also Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) ("The exclusive means to challenge an order of removal is the petition for review process."). While "[t]he zipper clause is not intended to cut off claims that have a tangential relationship with pending removal proceedings, . . . [t]he zipper clause promotes judicial economy by consolidating 'challenges to any action related to removal proceedings with the review of the final order of removal.'" *Canal A Media Holding, LLC v. U.S. Citizenship and Immigration Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020 (citations and alterations omitted)).

A "suit brought against immigration authorities is not *per se* a challenge to a removal order." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Instead, "whether the district court

has jurisdiction" instead of jurisdiction lying solely in the appellate courts on a petition for review, "will turn on the substance of the relief that a plaintiff is seeking." *Id.* Although Plaintiffs attempt to frame their case as raising a purely legal question, their request for relief makes clear that they ultimately seek to challenge their removal. *See* ECF No. 55 at 47 (requesting that the court "[v]acate the Defendants' denial of admission to [Plaintiffs] and remand the matters to Defendants with instructions that, within ten days of the date of the Court's order, the Defendants approve the admission of these individuals and admit them to the United States").[7]

Basic statutory interpretation instructs that judicial review of Plaintiffs' removal is not available here. Where ambiguity in the text exists, the court may look to the internal consistency of the statute. *Lee v. United States*, 66 F.3d 326 (Table), at *2 (6th Cir. 1995) (unpublished) ("Rules of construction require courts to read statutes in a manner that affords internal consistency." (citing *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 370 (1986))). Here, CBP agents ruled Plaintiffs inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). That determination, had it resulted in an order of removal instead of withdrawal of Plaintiffs' applications for admission, would have subjected the Plaintiffs' to expedited removal.[8] *See* 8 U.S.C. § 1225(b)(1)(A)(i). And noncitizens removed

---

[7] Moreover, the court notes that—even were it to find jurisdiction—it lacks authority to grant the relief requested by Plaintiffs. Plaintiffs request that the court vacate Defendants' denial of admission and remand the matter to Defendants with instructions that, within ten days of the date of the Court's order, the Defendants approve the admission of these individuals and admit them to the United States. *See* ECF No. 55, at 47. But the court lacks the authority to guarantee Plaintiffs' entrance in the future because Defendants must make admissibility determinations case by case according to the facts that are known at the time. 8 U.S.C. § 1225(a)(1), (3).

[8] At oral argument, counsel for Plaintiffs argued that in any case a CBP officer could, instead of issuing an expedited removal order, issue a Notice to Appear pursuant to 8 U.S.C. § 1229(a). But the language in 8 U.S.C. § 1225(b)(1)(A)(i) does not provide for such an option. Rather, if a noncitizen is found inadmissible "under section 1182(a)(6)(C) or 1182(a)(7), the officer *shall order the alien removed from the United States without further hearing or review* unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." In other words, a CBP officer can only issue an NTA and place a noncitizen in

pursuant to expedited removal are permitted very little judicial review, and certainly no review of the underlying admissibility determination.[9] *See id.*; 8 U.S.C. § 1252(e)(5) ("There shall be no review of whether the alien is actually inadmissible."); *see also Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 431 (3d Cir. 2016) (noting the expedited removal provision "clearly evince[s] Congress' intent to narrowly circumscribe judicial review of issues relating to expedited removal orders").

But Plaintiffs believe that they can bypass this limitation on judicial review because CBP officers never ultimately entered an expedited removal order. Rather, they indicated their intention to do so, and gave Plaintiffs the opportunity to withdraw their applications for admission in lieu of having a removal order entered against them. But it defies logic that Congress wished to withhold judicial review of inadmissibility determinations from individuals who receive expedited removal orders but permit judicial review of claims by individuals considered inadmissible for the exact same reasons but who withdrew their applications on the threshold of receiving an expedited removal order.

---

conventional removal proceedings if they express a need for asylum or fear of persecution. Otherwise, expedited removal is mandatory (absent discretionary permission to withdraw an application for admission). Plaintiffs in this case expressed no such fear. As such, the option of placing Plaintiffs in conventional removal proceedings would not have applied in this case.

[9] Plaintiffs rely heavily on *Gill v. Mayorkas*, No. C20-939, 2021 WL 3367246 (W.D. Wash. Aug. 3, 2021) in their briefing. But *Gill v. Mayorkas* presents a different factual scenario from this case. Specifically, the immigration officer found Gill inadmissible under 8 U.S.C. § 1182(a)(2)(C)(i), not under one of the INA's expedited removal grounds. *Id.* at *3, *6. Indeed, the *Gill* court highlights that distinction. The *Gill* court found that § 1252(a)(2)(A) "does not strip jurisdiction because the officer did not 'apply' § 1225(b)(1)—the expedited removal provision—to Plaintiff. Rather, the officer found him to be inadmissible under 8 U.S.C. § 1182(a)(2)(C)(i), which is not one of the grounds identified under the expedited-removal provision." *Id.* at *4. Accordingly, where an officer applies the expedited removal provision to find a noncitizen inadmissible under § 1182(a)(7), the *Gill* court's reasoning no longer applies.

The court acknowledges that this leaves Plaintiffs in a catch-22. They cannot challenge the inadmissibility decision until they receive an order of removal, which they can then challenge via a petition for review in the appropriate appellate court. Yet because CBP permitted them to withdraw their applications for admission they never received the requisite official order of removal. This leaves the court with the question of whether any other agency action outside of the issuance of an official final order of removal—specifically, an inadmissibility determination that was followed by withdrawal of the noncitizen's application for admission—can constitute an order of removal. At least two circuit courts have addressed whether an inadmissibility determination qualifies as an order of removal when a plaintiff withdraws her application for admission in lieu of receiving an official order of removal.

The Seventh Circuit first addressed the question in *Odei v. Department of Homeland Security*, 937 F.3d 1092 (7th Cir. 2019). In that case, a CBP officer refused Ernest Odei admission at the border for lack a proper visa. *Id.* at 1093. Immigration officials permitted Odei to withdraw his application for admission.[10] *Id.* Odei later challenged the inadmissibility determination. *Id.* The Seventh Circuit held that 8 U.S.C. § 1252(a)(2)(A), which bars judicial review of any order of removal pursuant to the expedited removal framework, applied because, in the Seventh Circuit's view, an "'order of removal' refers to both an order *to remove* as well as an order that an alien *is removable*." *Id.* For this proposition, the Seventh Circuit referred to 8 U.S.C. § 1101(a)(47), which holds that "the term 'order of deportation' refers not only to a decision 'ordering deportation' but also to an order 'concluding that the alien is deportable.'" *Id.* at 1094. Accordingly, the Seventh

---

[10] In this case, DHS officials permitted Odei to withdraw his application. CBP transferred Odei to ICE custody after he expressed a fear of returning to Ghana (noncitizens can remain for purposes of pursuing an asylum claim even under the expedited removal framework). But a week later Odei dropped his asylum claim. That would normally require immediate removal under the expedited removal framework, but DHS permitted Odei to withdraw his application for admission.

Circuit ruled that an inadmissibility finding qualified as an "order of removal" for purposes of § 1252(a)(2)(A), despite the fact that Odei later withdrew his application for admission and never had an official order of removal entered against him. *Id.* at 1095-96.

At least one district court criticized what it considered the *Odei* court's "strained reading of the statute" because "[t]he statute never states that an admissibility determination by an immigration officer shall be treated the same as a determination by an immigration judge that a noncitizen is deportable." *Gill v. Mayorkas*, No. C20-939, 2021 WL 3367246, at *5 (W.D. Wash. Aug. 3, 2021). Moreover, the "whole point" of permitting a noncitizen to withdraw her application is "to avoid an order of removal." *Id.* at *6. But "[t]hat becomes somewhat meaningless under the reasoning of *Odei*." *Id.* Accordingly, the *Gill* court determined that "an admissibility determination is not itself an 'order' but rather a predicate for one." *Id.* at *5.

The Second Circuit returned to the same issue in *Juras v. Garland*, 21 F.4th 53, 62 (2d Cir. 2021), where Juras was found inadmissible under § 1182(a)(7)(A)(i)(I).[11] The Second Circuit determined that it must answer the threshold question regarding the effect of Juras's decision to withdraw his application because that answer determined whether the court could hear Juras's petition for review.[12] *See id.* ("[I]f . . . the withdrawal of Juras's application rendered the IJ's inadmissibility finding a legal nullity, then it appears we must dismiss his petition for review, either for lack of a final order of removal or because the matter is moot."). The Second Circuit rejected

---

[11] In Juras's case, the inadmissibility determination was made by an Immigration Judge, not a CBP officer.

[12] In their supplemental briefing, Plaintiffs argue that *Juras* is inapplicable because the Plaintiffs do not challenge the agency's decision to permit them to withdraw their applications (as Plaintiffs contend Juras did), but rather the underlying inadmissibility finding. But *Juras* addresses both questions. Section II.B.1 addresses "jurisdiction to review the withdrawal decision" while section II.B.3 addresses "jurisdiction to review the BIA's inadmissibility finding." *Juras*, 21 F.4th at 60, 62. Therefore, the analysis from section II.B.3 is relevant to this case.

*Odei*'s reading of the statute and held that the legal authorities "do not address the effect, if any, of determinations made in a proceeding in which the application was withdrawn."[13] *Id.* at 63.

Accordingly, the Second Circuit determined that either (1) there is no order of removal because the withdrawal of Juras's application for admission rendered the prior IJ finding of inadmissibility to be nothing more than an advisory opinion that will not bind any future border official or (2) there is an order of removal because the IJ's decision included a determination that Juras is deportable.[14] Ultimately, the Second Circuit remanded the case to the BIA to determine which scenario is accurate. But for our purposes, either scenario would preclude this court's jurisdiction. Either Plaintiffs were ordered removed—meaning any review must occur in an appellate court on a petition for review (although, here, appellate review is likely unavailable because the inadmissibility determination occurred under one of the expedited removal provisions)—or the CBP officers' admissibility determinations are merely advisory opinions that are not binding in future instances—in which case, the court cannot rule on the propriety of an advisory opinion.

This court tends to agree with the Second Circuit, that whether an inadmissibility determination qualifies as an order of removal for purposes of the INA's jurisdiction stripping provision is a question best resolved by the implementing agency. Nevertheless, because the court finds that it lacks jurisdiction under either the reasoning in *Odei* or in *Juras*, it dismisses the claims

---

[13] The *Juras* court rejected the *Odei* court's reasoning because the *Odei* court relied on a single analogy to a case where an IJ granted a waiver of removal that the BIA reversed. *See Odei*, 937 F.3d at 1094-95 (discussing *Guevera v. Gonzales*, 472 F.3d 972, 973, 975-76 (7th Cir. 2007)). The Second Circuit found that analogy "unhelpful" in understanding the effect of withdrawal on an inadmissibility determination.

[14] "Deportation" and "deportable" are interchangeable with "removal" and "removable." *Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 247 (3d Cir. 2008).

by Plaintiffs who were found inadmissible at the border but permitted to withdraw their applications for admission.

Accordingly, the court finds that it has no jurisdiction to review the CBP officers' inadmissibility determinations.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' partial motion to dismiss.


DATED July 5, 2022.

BY THE COURT                          .


_____
Jill N. Parrish
United States District Court Judge